Filed 4/10/25  P. v. Majied CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083342 |
| v. | (Super.Ct.No. RIF1411978) |
| DAVID MALARCHER MAJIED, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, James M. Toohey and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant David Malarcher Majied appeals the trial court's denial of his postjudgment petition for resentencing under former Penal Code[1] section 1170.95 (renumbered section 1172.6 by Stats. 2022, ch. 58, effective June 30, 2022)[2] at the prima facie stage. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant and another man tried to rob a marijuana dispensary on May 2, 2014. Both men were armed. A dispensary employee was also armed, and when he drew his gun, one of the intruders shot at the employee, and he returned fire. The intruders and the employee continued to exchange gunfire until the intruders fled in a vehicle.

On January 30, 2015, a jury found defendant guilty of attempted murder (§§ 664, 187, subd. (a), count 1), assault with a firearm (§ 245, subd. (a)(2), count 2), attempted robbery (§§ 664, 211, count 3), and burglary (§ 459, count 4). Defendant admitted he had served four prior prison terms. (§ 667.5, subd. (b).) On September 18, 2015, a trial court sentenced him to a total term of 13 years in state prison.[4]

---

   [1] All further statutory references will be to the Penal Code, unless otherwise indicated.

   [2] To avoid confusion, we will refer to the statute as section 1172.6 in this opinion.

   [3] This brief factual summary and part of the procedural background are taken from our prior unpublished opinion. (See *People v. Majied* (June 16, 2022, E074375) [nonpub. opn.].) We took judicial notice of this opinion, as well as the unpublished opinion in defendant's other appeal, *People v. Majied* (Jan. 23, 2017, E064830, pursuant to defendant's request.

   [4] The total sentence included a nine-year term on count 1, which was subsequently reduced to six years.

Defendant appealed, and this court affirmed the judgment.  (*People v. Majied*, *supra*, E064830.)

On March 13, 2019, defendant filed a petition for resentencing under section 1172.6, in propria persona, alleging that he was convicted of attempted second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of attempted second degree murder because of the amendments to sections 188 and 189.  The trial court granted the People's request to dismiss the petition, finding that a defendant convicted of attempted murder was not entitled to relief.  (*People v. Majied*, *supra*, E074375.)  This court affirmed. (*Ibid.*)

The Supreme Court granted review, and while review was pending, the Legislature enacted Senate Bill No. 775.  The matter was remanded back to this court with directions to vacate our opinion and reconsider the matter in light of Senate Bill No. 775.  This court then reversed the order denying defendant's petition and remanded the matter for the trial court to reconsider his petition at the prima facie stage.  (*People v. Majied*, *supra*, E074375.)

On February 16, 2024, the court held a prima facie hearing.  The court heard arguments from counsel, thoroughly examined and discussed the jury instructions that were given at trial and took the matter under submission.  The court held another hearing on February 23, 2024, and denied defendant's petition, noting "[n]atural and probable consequences was never described in any of the instructions."  The court concluded there

3

was no "instructional pathway" for the jury to impute malice under the jury instructions that were given.

## DISCUSSION

### The Trial Court Properly Denied Defendant's Petition

Defendant contends the trial court erred in denying his resentencing petition at the prima facie stage because the record does not conclusively establish that he is ineligible for relief under section 1172.6 as a matter of law. He claims there was "natural and probable consequences language in the CALCRIM No. 400 instruction" which allowed the jurors to "impute malice to [him] for attempted murder based on his willing participation in the commission of the other charged crimes." The People argue the record establishes that defendant was convicted of attempted murder as a direct perpetrator or an aider and abettor, and acted with the intent to kill; therefore, he is ineligible for resentencing under section 1172.6. We agree with the People.

A. *Resentencing Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess., Stats. 2018, ch. 1015 (Senate Bill 1437)) was enacted "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Senate Bill 1437 "substantially modified the law relating to vicarious liability

4

for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder [Citation] and by narrowing the scope of felony murder [Citation]." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 11 (*Lopez*).) It "eliminated the natural and probable consequences doctrine by adding the following language to section 188: 'Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Ibid.*; § 188, subd. (a)(3).) Senate Bill 775 amended section 1172.6 to clarify, among other things, that persons convicted of attempted murder under the natural and probable consequences doctrine are eligible for resentencing under the statute. (Stats. 2021, ch. 551, §§ 1-2.)

Senate Bill 1437 added section 1172.6, which provides a procedure for individuals convicted of attempted murder who could not be convicted under the law as amended to retroactively seek relief. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) Under section 1172.6, the relief process begins with the filing of a petition containing a declaration that all requirements for eligibility are met (§ 1172.6, subd. (b)(1)(A)), "including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3))." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

When the trial court receives a petition containing the necessary declaration and other required information, the court must "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) "If the court finds the petitioner has made a prima facie case, the court must issue an order to show cause." (*Lopez, supra*, 78 Cal.App.5th at p. 12; § 1172.6, subds. (c).) However, "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, *supra*, 13 Cal.5th at p. 708.)

The record of conviction includes the charging document, verdict forms, closing arguments, and jury instructions. (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.) "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner ]acted with malice aforethought that was not imputed based solely on participation in a crime." (*Lopez, supra*, 78 Cal.App.5th at p. 14.)

The trial court here denied defendant's resentencing petition on the ground that he had failed to make a prima facie case for resentencing relief. "'''A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible

6

for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo."'" (*Lopez, supra,* 78 Cal.App.5th at p. 14.)

B.  *Jury Instructions*

The court here instructed the jury with CALCRIM No. 252, stating that the charged crimes require "proof of the union, or joint operation, of act and wrongful intent."  The instruction further stated that the charged crime of attempted murder "require[s] a specific intent or mental state" and that, to find a person guilty, "that person must not only intentionally commit the prohibited act, but must do so with a specific intent," and "[t]he act and the specific intent … required are explained in the instruction for that crime."

The court instructed the jury on attempted murder with CALCRIM No. 600, in part, as follows:

"The defendant is charged in Count 1 with attempted murder.

To prove that the defendant is guilty of attempted murder, the People must prove that:

1. The defendant took at least one direct but ineffective step toward killing another person; AND

2. The defendant intended to kill that person."

The court also instructed the jury on aiding and abetting principles with CALCRIM Nos. 400 and 401.  CALCRIM No. 400 stated:

7

"A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. ¶ A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator. ¶ Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

CALCRIM No. 401 stated: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

1. The perpetrator committed the crime;

2. The defendant knew that the perpetrator intended to commit the crime;

3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

AND

4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

C. *Defendant is Ineligible for Relief As a Matter of Law*

Defendant claims the record "does not conclusively foreclose the possibility" that he may have been convicted of attempted murder under a natural and probable consequences theory. We disagree.

8

The record demonstrates that the jury instructions ensured the jury would only find defendant guilty of attempted murder, even as an aider and abettor, if it concluded he acted with the intent to kill. A conviction of attempted murder as a direct perpetrator "'requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*).) "'[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing — which means that the person guilty of attempted murder as an aider and abettor must intend to kill.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).) "An intent to kill is the equivalent of express malice." (*People v. Coley* (2022) 77 Cal.App.5th 539, 547 (*Coley*).)

Section 1172.6 applies by its terms only to attempted murders based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine … may file a petition"].) Significantly, the trial court here never instructed the jury with CALCRIM Nos. 402 or 403, which contain the natural and probable consequences doctrine. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 946 (*Estrada*).) In other words, the jurors were not instructed on the natural and probable consequences doctrine. Rather, they were given CALCRIM Nos. 400 and 401, as well as CALCRIM No. 600, which specifically advised them that an attempted murder conviction required a finding that "the defendant

9

intended to kill [the victim]."  Accordingly, to find defendant guilty of attempted murder, which the jury did here, it necessarily found that he acted with the intent to kill.  (*Coley*, *supra*, 77 Cal.App.5th at p. 547 ["by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill"]; see also, *Smith*, *supra*, 37 Cal.4th at p. 739 [a conviction of attempted murder as a direct perpetrator "'requires the specific intent to kill'"]; *Nguyen*, *supra*, 61 Cal.4th at p. 1054 ["'the person guilty of attempted murder as an aider and abettor must intend to kill'"].)  We further note the prosecutor argued that defendant was either the direct perpetrator or an aider and abettor to the shooter, and that he had the intent to kill.

 Therefore, because the record of conviction shows there were no instructions given on the natural and probable consequences doctrine and that the jury found defendant acted with the intent to kill, the court properly found that he was ineligible for relief under section 1172.6.  (*Estrada*, *supra*, 77 Cal.App.5th at pp. 945-946; *Coley*, *supra*, 77 Cal.App.5th at pp. 547-548.)

Defendant claims he stated a prima facie case of resentencing based on the following paragraph in CALCRIM No. 400:  "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."  (hereinafter, the bracketed paragraph)  He contends that the "natural and probable consequences language" in the bracketed paragraph allowed the jury to impute malice to him for attempted murder "based on his willing participation in the commission of the other

10

charged crimes." Defendant cites the Bench Notes for this instruction, which state, "'When the prosecution is relying on aiding and abetting, give this instruction before other instructions on aiding and abetting to introduce this theory of culpability to the jury.' It goes on to state: 'If the prosecution is also relying on the natural and probable consequences doctrine, the court should also instruct with the last bracketed paragraph.'" (*Estrada*, *supra*, 77 Cal.App.5th at p. 946.)

However, the Bench Notes to CALCRIM No. 400 "further instruct that after CALCRIM No. 400 is given, '[d]epending on which theories are relied on by the prosecution, the court should then instruct' the jury on either (1) 'CALCRIM No. 401, Aiding and Abetting: Intended Crimes' for 'Target Crimes,' or (2) CALCRIM Nos. 402 or 403 for 'Natural & Probable Consequences Doctrine (Non-Target Crimes),' and that the latter is appropriate when 'the prosecution's theory is that any of the crimes charged were committed as a natural and probable consequence of the target crime . . . .'" (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.) Here, *only* CALCRIM No. 401 was given to the jury, indicating the prosecution relied on a theory of aiding and abetting, not on the natural and probable consequences doctrine. Defendant concedes that the jury was not given CALCRIM Nos. 402 and 403.

Further, defendant's claim that the bracketed paragraph in CALCRIM No. 400 provided an "instructional pathway" for the jury to impute malice to him was specifically rejected in *Estrada*, supra, 77 Cal.App.5th 941. The *Estrada* court found that "the bracketed language alone [was not] sufficient to find that the jury was instructed on a

11

natural and probable consequences theory" because of the court's prior holding that "the jury instructions, taken as a whole, required the jury to find that [the defendant] acted with intent to kill in order to find him guilty of first degree murder, even under an aider and abettor theory." (*Id*. at p. 947; see also, *People v. Rushing* (2025)___Cal.App.5th___ (Feb. 27, 2025, B334988) [2025 Cal.App. LEXIS 176, *5-*9].)

Applying *Estrada*, *supra*, here, the fact that the jury was instructed with the bracketed paragraph should not be viewed in isolation. Rather, the jury instructions must be taken as a whole. (*Estrada*, supra, 77 Cal.App.5th at p. 947.) The jury was not only instructed with CALCRIM No. 400, but also CALCRIM Nos. 252, 401, and 600. CALCRIM No. 252 informed the jury that, in order to find a person guilty of attempted murder, "that person must not only intentionally commit the prohibited act, but must do so with a specific intent" and "[t]he act and the specific intent … required are explained in the instruction for that crime." CALCRIM No. 401 explained to the jury that, to find a defendant guilty of a crime as an aider and abettor, the People had to prove that the defendant "knew that the perpetrator intended to commit the crime" and that "[b]efore or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime." CALCRIM No. 600 specifically advised the jurors that, in order to find defendant guilty of attempted murder, they were required to find that "the defendant intended to kill [the victim]." These instructions, when given in addition to CALCRIM No. 400, "'ensured that the jury would only find [defendant] guilty of

[attempted] murder, even as an aider and abettor, if it concluded he acted willfully and with intent to kill.'" (*Estrada, supra*, 77 Cal.App.5th at p. 945.)

The *Estrada* court further explained its reasoning in light of *People v. Johnson* (2016) 62 Cal.4th 600 (*Johnson*), stating, "Our Supreme Court's analysis regarding a prior version of CALCRIM No. 400 and its interplay with CALCRIM No. 401 is determinative here. In . . . *Johnson*, . . . , the jury was instructed on an old version of CALCRIM No. 400 providing that: '"A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted the perpetrator, who directly committed the crime. A person is *equally guilty* of the crime whether he committed it personally or aided and abetted the perpetrator who committed it."' [Citation.] The court held that where CALCRIM No. 401 is also provided, 'there was no reasonable likelihood the jurors would have understood the "equally guilty" language in former CALCRIM No. 400 to allow them to base defendant's liability for first degree murder from the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing.'[5] [Citation.] Here, where the 'equally guilty' language was no longer present in the version of CALCRIM No. 400 provided to the jury, there is even less of a possibility that the jury could have imputed [defendant's] liability for first degree murder from the mental state of the actual shooter. Applying *Johnson*, [defendant] is ineligible for

---

[5] CALCRIM No. 401 explained that, to find a defendant guilty of a crime as an aider and abettor, the People had to prove that he "knew that the perpetrator intended to commit the crime" and that "[b]efore or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime."

13

resentencing as a matter of law because the jury was instructed on CALCRIM No. 401." (*Estrada, supra*, 77 Cal.App.5th at pp. 947-948.) The same reasoning applies here.

Defendant attempts to distinguish *Estrada*, *supra*, by pointing out that the bracketed paragraph from CALCRIM No. 400 was given only once, whereas the jury in the instant case was given that paragraph twice, since the court re-read it when responding to the jury's request for clarification about the meaning of aiding and abetting. However, this is a distinction without a difference.

Finally, in support of defendant's claim that the jury could have imputed malice to him, he points out that the jury found he did not personally discharge a firearm during the incident, and that he was not guilty of criminal threats.[6] However, just because the jury did not find the firearm enhancement true does not mean it imputed malice to him for attempted murder based on his commission of the other charged crimes. Regarding the criminal threats charge, defense counsel made the same argument at the prima facie hearing, noting the prosecutor argued the basis of that charge was that defendant told the actual shooter to "kill that person." However, the court responded that a not guilty finding on the criminal threats charge was immaterial, since the jury could have rationally believed defendant's statement was not intended as a threat, but as a command to his cohort, made with the intent that the victim be killed.

---

[6] The information charged defendant with threatening the victim, with the specific intent that his statements be taken as a threat (§ 422, count 5), and alleged that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)). However, the jury found him not guilty of count 5 and did not find true the firearm enhancement.

14

In sum, defendant's record of conviction demonstrates that he was not convicted of attempted murder under the natural and probable consequences doctrine. Rather, in finding him guilty, the jury necessarily found that he acted with the intent to kill. As such, he is ineligible for section 1172.6 relief as a matter of law.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.

15